May it please the Court, my name is Rose Kosiewski and I am appearing on behalf of Petitioners Oscar Martinez-Medina and Ladislao Martinez-Quintana. Petitioners here request that this Court grant their petition for review based on an egregious violation of the Fourth Amendment resulting in their stop and seizure. Mr. Holder, counsel, I don't understand why it's egregious. You've got language under Bostick's saying it's okay for a policeman to ask somebody a bunch of questions. You've got Mina saying it's okay to ask them a bunch of questions and to detain them for an extended period of time, at least in that case where there was a search going on. Arguably, this case is distinguishable. Arguably, it isn't. But because of those cases, I don't really see why it's egregious. Okay. Petitioners believe it was egregious, Your Honor, because at no point in time did they feel free to end the encounter with the police officer. Oh, no question about that. They were – I think it's pretty clear they were seized, but I don't see why the seizure is egregious. Okay. I think the timing of the seizure is critical in the analysis. Petitioners believe that, in fact, they were seized at the point in time that they were asked for their identification cards. The record reflects that they were asked for their IDs, and then they were immediately asked questions about immigration. And there is a case which is Chan v. – I'm sorry, U.S. v. Chan-Jimenez, where this court held that Mr. Chan had pulled off the highway. He had lifted his hood, indicating that there was car trouble. I remember that. But in MENA, the Supreme Court went out of its way to correct the Ninth Circuit on that and say it's okay to ask somebody about their immigration status. Right. However, I believe MENA, the holding, was when the stop was already lawful. But he was stopped – if I'm remembering this correctly, they were – they had stopped by themselves at the gas station trying to repair their car. That's correct. And the police officer came up and asked them some questions. So when he asked the initial questions, it wasn't that the police had stopped them. It was just approaching – like approaching someone on the street and asking questions. Isn't that right? That's correct, Your Honor. And then when they asked, are you in the country legally or do you have your green card, he said no. And at that point, the officer wanted to detain them until he could bring the immigration there. So I'm still struggling, as Judge Kleinfeld was indicating, with how this meets our standard for an egregious violation, which is actually more like our qualified immunity standard. So it would have to be a constitutional violation that occurs when evidence is obtained by either deliberate violations of the Fourth Amendment or by conduct a reasonable officer should have known is in violation of the Constitution. So maybe you could sketch out for us why a reasonable officer should have known that asking, detaining these individuals until the immigration authorities came, he should have known that these individuals were of Hispanic descent. He knew that their ability to speak English was anywhere from very good to not at all. And depending on when the court deemed that these individuals were of Hispanic descent,   Okay. Thank you, Your Honor. I would like to ask the question of whether or not the immigration question is considered at the point that the immigration officer deems the seizure. If the seizure occurred before the immigration inquiry, that would, of course, presume that the officer was holding on to the IDs and the Petitioners were not free to leave at that point, then that immigration question would not be considered as part of the reasonable suspicion factors. If that question is considered, that leaves three points that the officer knew at the point that he decided to detain. Again, one, the ethnicity. Second, ability to speak English. And third, that they did not have green cards. It's important to note. Wasn't there an understanding? I thought both sides agreed that the answer to the green card question, that we're here in the country illegally. Right. That's true. Petitioners did state that in court. However, I think the reasonable suspicion analysis happens from the officer's point of view. And in this case, for whatever reason, the officer did not come and testify, which I believe was another error by the BIA and the IJ to not require that the sheriff be present to answer questions. Basically what happened was the BIA presumed that on those three factors, that justified reasonable suspicion. However, those three factors describe an enormous segment of the population in the United States, Hispanic, English language ability, and do not have a green card. It's irrelevant whether the petitioners understood the question of do you have a green card to mean do you have legal status in the country. That's irrelevant. What the officer knew was that he asked do they have a green card and they said no. There's a lot of people that have other immigration status here in the United States, even U.S. citizens who would meet that profile. Counsel, why do you say that the issue is reasonable suspicion? Isn't the issue whether there was probable cause to believe a crime had been committed? Right. And it's not a crime to be in the country illegally. It's a crime to have entered the country illegally. It's a crime not to carry your green card if you have a green card. It's a crime to do several other things, to come back to the country who have been in the country without papers. It's a civil offense, not a crime. Isn't that right? That's correct, Your Honor. Isn't that the law of the Ninth Circuit? Excuse me? Isn't that the law of the Ninth Circuit? Yes, I believe so, Your Honor. And I think it's important to note that in this case, the time of detention far exceeded anything reasonable for what a seizure would be considered. Now let's get on to the question of what a reasonable police officer should have  done. Had the reasonable police officer read the Ninth Circuit and came to the opinion that we've just conversed on, wouldn't he also have to know about INS versus Lope Mendoza, where the Supreme Court had held or had said that it is a crime to remain unlawfully in this country, something totally different from what we just discussed? Right. I believe, Your Honor, that Lopez Mendoza, it's a controversial decision because subsequent to that decision, there has been precedent here in the Ninth Circuit that has expanded on the idea that we can apply the exclusionary rule in immigration proceedings. Can the Ninth Circuit tell the Supreme Court that it was wrong? No, but there is dicta in that decision that the Ninth Circuit has taken. There has not yet been another case decided en banc from the Ninth Circuit. What is the poor police officer to do if he says counsel for Medina tells me that the Ninth Circuit says one thing, but the Supreme Court language says something else? Right. Is this an egregious violation? What Lopez says is that the exclusionary rule generally does not apply in removal proceedings. I don't think that that was the perspective that the officer would have been the mode that he would have been thinking when he asked those questions. Furthermore, this officer should have been guided by Oregon Statute 181.850 that states no law enforcement agency of the State of Oregon or of any political subdivision of the State shall use agency monies, equipment, personnel for the purpose of detecting or apprehending persons whose only violation of the law is that they are persons of foreign citizenship present in the U.S. in violation of Federal immigration laws. But the violation of the State sanctuary law doesn't constitute a constitutional violation. I mean, even the State supreme court says that, and the State viewpoint is. I think that the Petitioners would argue that the reason why that law exists is to protect not only them, but other individuals. As I mentioned, the three. What does it matter? We have a lot of Ninth Circuit law, and of course there's Supreme Court law, that it just doesn't matter. For example, in Alaska, a policeman can't wire himself and talk to somebody in a bar and buy some cocaine and then produce the wire in court as evidence against them. It's a violation of the Alaska right to privacy and not to have your conversations recorded, even if the other party consents. However, we have Ninth Circuit law that says that the tape comes in as evidence in a Federal case because the violation of State law is irrelevant to whether the conduct violates the Fourth Amendment. And then the Supreme Court said exactly the same thing subsequently in Virginia v. Moore, that the violation of State law is simply irrelevant to whether there's a Fourth Amendment violation. So I don't really see how you get to first base. I think the With the fact that the policeman violated Oregon law. Right. I think that the Oregon law comes into play more in the mindset of the officer. He asked one question, one question only, which was, do you have green cards? I think the officer was abundantly aware that because of this Oregon statute that prohibited him from enforcing immigration law, he knew that he could not ask further questions.  Let's say that the officer willfully violated Oregon law. How does that affect the Fourth Amendment analysis? I think it goes to the egregiousness factor. Even if it isn't an exact equivalent, I think it shows that this particular violation in Oregon was egregious. And the fact that the officer was not there and not required to testify, I think, shows that the BIA really made a lot of assumptions regarding reasonable suspicion of what the officer thought or didn't think. Your Honor, I'd like to reserve the rest of the time for rebuttal. I'm afraid we've gone the whole 10 minutes. But thank you, counsel. Counsel, please proceed. Your Honor, may it please the Court. Stuart Nickham for the Attorney General. The petition for review in this case should be denied as the immigration judge in the board probably concluded or probably denied the motion to suppress in this case. And two bases. First, there was no violation of the First Amendment. Could you help me with something, Ed? This fellow was held for anywhere, I can't remember how much time it was, and I think the accounts varied, somewhere between 45 minutes and 2 hours. Correct. Standing around waiting for La Migra. Nobody's talking about whether that is an arrest, but it's certainly a seizure. Is that an arrest? No, I don't believe so. I think the question you have to look at is the investigatory purpose. Could there be a seizure of that length without it being an arrest? I assume that there are circumstances in which it could be, not in this case, though. I mean, I think the courts of the Supreme Court has held the – it is a fact that is a fact-dependent question as to whether or not the length of detention constitutes an arrest or a seizure. What is the constitutional justification for holding a person that long? I'm sorry. What is the – I mean, I think it's similar to a Terry stop type situation where – A Terry stop is permissible. If it's temporary and lasting no longer, then it's necessary to effectuate the purpose of the stop. That's from Florida v. Royer. So the question is, why was it necessary to hold the individuals to – for the purpose of the stop if all the officer wanted to know was, are you in the country? Do you have a green card? They said no. And then why did he have to hold them two hours? Was there information that the INS had that the police officers didn't? So why was it justified for the purpose of the stop? I think it was justified because the officer did the right thing here in terms of calling the INS and asking them to come down and talk to these people. I mean, I assume, again, these facts aren't on the record, but I assume that the officer probably didn't have access to immigration databases or anything like that. Do you think that Mr. Medina could have, as an objective, reasonable person, have walked away and not stayed there for two hours? I believe the officer made a stop after the – after Mr. Medina acknowledged that he didn't have waffle status, acknowledged he didn't have a green card. So it was an arrest. Well, it was a stop at that point, I think. A Terry stop type situation. Did a Terry stop last two hours? It lasted until the INS officer arrived to – and actually made the arrest. He needed two hours to find out if the man was dangerous to himself? I'm sorry. I'm having a little bit of difficulty hearing. He needed two hours to do a Terry stop to find out if Mr. Medina was dangerous to the Oregon policeman? Not in terms of danger to the Oregon police officer. But at that point, the – I'm sorry. Once the Petitioner acknowledged that they did not have a lot of documentation, that they were not in the country lawfully, at that point, the officer had reasonably articulable suspicion of a – of both a criminal offense and a civil offense in terms of – What's the criminal offense? The criminal offense – and it would not be entering the country unlawfully. But there are criminal offenses for failure to have immigration documentation on the state. Only if you have a green card, you have to have it at all times. But a tourist who is here and has a passport doesn't have to have his passport on him at all times? Your Honor, I disagree with that. Section 1304E, I believe, says that any alien needs to have their registration certificate with them. If he's registered, what – Most aliens – you walk down Broadway in New York and it's full of foreigners and they're all here on tourist visas. None of them have green cards. None of them have green cards, but they were given an alien registration receipt. And Section 8 U.S.C. 1301 requires that any alien be given a – I'm sorry, be registered and fingerprinted to get – in order to get a visa. 1304E requires lawful – Alien receipts? I thought all they had was a rubber stamp and their German passport. That would be the receipt. That is the – that's the receipt, registration document. And 1304E requires that they carry them with them at all times. You're saying every foreign tourist who comes over here with a visa passport needs to have the visa or passport on them at all times per 1304E? That's my understanding of it, yes. Okay. And failing for – if they left the passport in the hotel, that technically would be a misdemeanor. Is that – Technically, yes. Yes. I mean, I don't believe that's an often enforced criminal violation, but it is a misdemeanor offense. Second, I don't believe that there needs to be a distinction between civil offenses and criminal offenses. And I think the Court's decision, the Supreme Court's decision in Lopez Mendoza, the statement that – Now, we know that the policeman did not have authority as an Oregon policeman to arrest somebody for this particular Federal offense. And I'm thinking, policeman says, stop, I want to talk to you. Well, he has that right. He has reasonable suspicion. And I think he had reasonable suspicion. These fellows were already stopped anyway. And then I say, okay, I've talked to you, goodbye. And he says, wait a minute, you can't go. And I have to stand around for two hours, two hours of my time. That's a lot to take away from me. How does he – and so I ask him, am I under arrest? Well, no. How does he hold me for two hours, even assuming that I'm committing this misdemeanor of not having my passport with me? Again, I mean, I believe that the – at the point at which he asks the question and receives a response that doesn't have documents, there's both probable cause for an arrest and reasonable suspicion. Yes, there is. But as I understand it, he doesn't arrest because he knows that under Oregon law he can't arrest. That's why he calls the Feds. I don't disagree with that in terms of what the record establishes. But assuming that – I thought the record was clear that it was a State rather than a Federal law enforcement officer and that there was a State law that prohibited the State officer from using his authority as an officer. Of course, yes. To expect a Federal arrest for an immigration offense. Yes, yes. The subject of it, what was in the mind of the officer, is what I'm saying, that the record doesn't – doesn't do that. But the fact that the State law prohibited an arrest, again, it doesn't mean that this was a Fourth Amendment violation. That's – I mean, the question of State law doesn't go to the constitutionality of the Fourth Amendment issue. What was it when the policeman was holding him for two hours? Was it a – I'm sorry, Your Honor. I couldn't hear you. What was it exactly when the policeman was holding him for two hours? If he wasn't free to go, was it an arrest? And if it wasn't, what else was it? Well, yeah. I believe it was a stop. I think that the point at which the officer said stop, it doesn't matter if it was, you know, reasonably indicative of suspicion or – But suppose that the policeman had caught this fellow in Chignik, Alaska. He was a hand on a fishing boat. He caught him in Chignik. And it takes a day and a half for anyone from the INS to get to Chignik. Would it still be a stop? We're talking about the reasonableness of the length of time. I mean, I think a day and a half would be – I would have a very difficult time arguing that that would be a reasonable length of time. Again, not to concede the issue, but I think that would be a very difficult argument. Asking anyone to get there. But I think the circumstances here, where it is a 45-minute to 2-hour, I'm not sure exactly how much time, but the reasonableness of that length of time, yes, it is two hours out of their day. But I think given the fact that it took the officer a long time to get there, it is reasonable under the circumstances. Again, it's an unfortunate two-hour delay, but it is reasonable here. Are you saying that the officer would be justified whether it was a probable cause, whether it was an arrest, even if that was unlawful under Oregon law, that the officer had probable cause to hold – to arrest and hold this person? Or are you saying that the officer had reasonable suspicion, or are you saying it doesn't make a difference? I'm saying the officer had both, and that it doesn't make a difference, and that either would be sufficient. And saying that I don't have a green card is enough to give you probable cause that there's a violation of 1304e. Is that your position? Yes. Yes. Yes. Again, it would only need to be reasonable suspicion, but that would be a sufficient under – for both of my purposes. I think, I mean, I heard – Could a store guard do it? I'm sorry, Your Honor. It looks to me like asking these fellows the questions I think was probably fine. I don't know if it even counts as a stop since they were stopped already. The inquiries seem fine under Bostick. After that, I'm wondering whether the policeman is like somebody, say, the security people at a J.C. Penney store holding somebody for two hours until the immigration people get there. Can they do that? A policeman has no authority to make an arrest for this. That's why he's called INS. And I'm wondering if he's just like a private guard in a store. Can they do that? I just didn't notice my time was up, though, if I could bring it up. Please answer it. Again, I don't know the specific legal consequences as to that distinction. It would strike me that that would not – that would be a much more problematic type of situation. The officer's authority to arrest under State law, again, doesn't go to the issue of whether or not there was a Fourth Amendment violation. It doesn't go to the issue of egregiousness of the Fourth Amendment violation. For a private individual to detain somebody, I think that certainly would be an actionable thing against the private individual. But, again, I don't believe it necessarily goes to the Fourth Amendment issue. But my time is up, though. Martinez, Medina v. Holder.
judges: Kleinfeld, Bea, Ikuta